UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

ANTONIO M. PEREZ,

                Petitioner,

-vs-                                      Case No. 8:08-cv-511-T-33MAP

SECRETARY, DEPT. OF CORRECTIONS,

                Respondent.
_____/

## **ORDER**

This cause is before the Court on pro se Petitioner Antonio M. Perez's 28 U.S.C. § 2254 petition for writ of habeas corpus. Perez is proceeding on his amended petition (hereinafter "petition" or "Petition")(Doc. No. 7). Perez challenges his convictions and sentences entered by the circuit court for the Tenth Judicial Circuit, Polk County, Florida. A review of the record demonstrates that, for the following reasons, Perez's petition must be denied.

Procedural History

On March 8, 2004, the State Attorney's Office for the Tenth Judicial Circuit in and for Polk County, Florida, filed a three count Information charging Perez with one count of driving without a license and negligently causing serious bodily injury, a third degree felony in violation of §§ 322.03, and 322.34, Fla. Stat. (2004); one count of reckless driving, a third degree felony in violation of § 316.192, Fla. Stat. (2004); and one count of leaving the scene of a crash involving injury, a third degree felony in violation of § 316.027, Fla. Stat. (2004), in Case No.

CF04-001072-XX. (See Respondent's Exhibit 1, Volume 1, R:21-27, Felony Information filed March 8, 2004).[1]

Perez proceeded to jury trial, and was tried before the Honorable Circuit Court Judge Dennis P. Maloney on August 9 and 11, 2004. (See Respondent's Exhibit 1: Transcript of Trial, Volumes 1 and 2, T:1-177). On August 11, 2004, Perez was found guilty as charged. (See Respondent's Exhibit 1: Volume 1, R:28-29, Verdict Form filed August 11, 2004).

The court ordered a pre-sentence investigation and set sentencing for a later date. On September 15, 2004, the Honorable Circuit Court Judge Dennis P. Maloney sentenced Perez to five years incarceration as to counts one and two, with count two to run consecutive to count one, and to five years probation on count three consecutive to the state prison sentence. (See Respondent's Exhibit 1: Volume 1, R:30-39, 49-57, Transcript of Sentencing Hearing and Judgment and Sentencing Documents, filed on October 1, 2004).

On October 1, 2004, Perez directly appealed the convictions and sentences. On February 9, 2005, counsel filed an Initial *Anders* Brief in the state district court of appeal. (Respondent's Exhibit 2). On April 11, 2005, Perez filed a pro se initial brief. (Respondent's Exhibit 4). Perez raised one ground for relief:

> WHETHER THE TRIAL COURT VIOLATED APPELLANT'S DOUBLE JEOPARDY RIGHTS WHEN THE TRIAL COURT UNLAWFULLY ADJUDICATED AND SENTENCED APPELLANT TO MULTIPLE TRAFFIC VIOLATIONS INVOLVING INJURY BY USING SINGLE INJURY AS ENHANCEMENT FACTORS ON THREE OFFENSES?

(Respondent's Exhibit 5)

---

[1] The Index of the State appellate record for Case No. CF04-001072-XX shows an erroneous filing date of February 16, 2004. However, the record shows that the Information was signed and filed on March 8, 2004.

On October 7, 2005, the state district court of appeal per curiam affirmed, without written opinion, Perez's judgment and sentence in Case No. 2D04-4563. *Muñoz-Perez v. State*, 915 So. 2d 1210 (Fla. 2d DCA 2005)(table).

On June 22, 2006, Perez filed a pro se Rule 3.850 motion for postconviction relief raising eight grounds of ineffective assistance of counsel. On November 22, 2006, Perez filed a pro se amended Rule 3.850 motion for postconviction relief, again raising eight grounds of ineffective assistance of counsel.

On November 30, 2006, the state trial court entered an order entitled "Order on Defendant's Motion for Postconviction Relief and Order to Show Cause," which essentially denied grounds seven and eight, and directed the State to show cause why Perez was not entitled to the relief requested in grounds one through six. On December 4, 2006, the State filed its response to the state trial court's order. On January 18, 2007, the state trial court summarily denied Perez's Rule 3.850 motion for postconviction relief.

On February 15, 2007, Perez appealed the denial of his 3.850 motion for postconviction relief. On March 28, 2007, Perez filed his initial pro se brief on the merits, raising three issues or grounds for relief:

> ISSUE 1: WHETHER THE LOWER COURT COMMITTED HARMFUL ERROR BY DENYING GROUNDS 7 AND 8, ON NOVEMBER 30, 2006, WITHOUT CONDUCTING AN EVIDENTIARY HEARING OR REQUIRING STATE TO RESPOND TO, AND BY MAKING ITS OWN CONCLUSIONS WHICH WERE ERRONEOUS?
>
> ISSUE 2: WHETHER THE LOWER COURT PREJUDICIALLY ERRED IN ITS DENIAL OF GROUNDS ONE TO SIX BASED UPON AGREEMENT AND ADOPTION OF THE STATE'S ARGUMENT AS TO WHY RELIEF SHOULD BE DENIED, WHICH UNSWORN ALLEGATIONS ARE REFUTED BY THE RECORD?

ISSUE 3: WHETHER THE LOWER COURT PREJUDICIALLY ERRED IN DENYING GROUND NINE BY MISCONSTRUING THE LAW AND LEGISLATIVE INTENT?

(Respondent's Exhibit 17).

On September 21, 2007, the state district court of appeal per curiam affirmed, without written opinion, the state trial court's denial of Perez's Rule 3.850 motion for postconviction relief. (Respondent's Exhibit 18). *Perez v. State*, 967 So. 2d 208 (Fla. 2d DCA 2007)(table). The mandate issued November 8, 2007.

Perez then timely filed the present 28 U.S.C. § 2254 petition for writ of habeas corpus raising four grounds for relief.

## STANDARDS OF REVIEW

### The AEDPA Standard

Under 28 U.S.C. § 2254(d) and (e) as amended by the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA), this court's review of the state court's factual findings must be highly deferential. Such findings are presumed to be correct unless rebutted by clear and convincing evidence. Similarly, the state courts' resolutions of issues of law-including constitutional issues-must be accepted unless they are found to be "contrary to" clearly established precedent of the Supreme Court of the United States or involve an "unreasonable application" of such precedent. *Williams v. Taylor*, 529 U.S. 362 (2000). Indeed, it is not enough that the federal courts believe that the state court was wrong; it must be demonstrated that the state court decision was "objectively unreasonable." Id. *Breedlove v. Moore*, 279 F.3d 952 (11th Cir. 2002).

The Procedural Default Doctrine

Under the procedural default doctrine, "[if the petitioner has failed to exhaust state remedies that are no longer available, that failure is a procedural default which will bar federal habeas relief, unless either the cause and prejudice or the fundamental miscarriage of justice exception is applicable." *Smith v. Jones*, 256 F.3d at 1138. "The doctrine of procedural default was developed as a means of ensuring that federal habeas petitioners first seek relief in accordance with established state procedures." *Henderson v. Campbell*, 353 F.3d 880, 891(11th Cir. 2003)(quoting *Judd v. Haley*, 250 F.3d 1308, 1313 (11th Cir. 2001)).

As stated above, a procedural default will only be excused in two narrow circumstances. First, petitioner may obtain federal habeas review of a procedurally defaulted claim if he shows both "cause" for the default and actual "prejudice" resulting from the default. "Cause" ordinarily requires petitioner to demonstrate that some objective factor external to the defense impeded the effort to raise the claim properly in the state court. *Henderson v. Campbell*, 353 F.3d at 892; *Marek v. Singletary*, 62 F.3d 1295, 1302 (11th Cir. 1995). To show "'prejudice," Perez must show "not merely that the errors at his trial created a possibility of prejudice, but that they worked to his factual and substantial disadvantage, infecting his entire trial with error of constitutional dimensions." *Hollis v. Davis*, 941 F.2d 1471, 1480 (11th Cir. 1991) (quoting *United States v. Frady*, 456 U.S. 152, 170 (1982)). Perez must show that there is at least a reasonable probability that the result of the proceeding would have been different. *Henderson v. Campbell*, 353 F.3d at 892.

Second, a petitioner may obtain federal habeas review of a procedurally defaulted claim, without a showing of cause or prejudice, if such review is necessary to correct a fundamental miscarriage of justice. *Edwards v. Carpenter*, 529 U.S. 446, 451 (2000); *Henderson v.*

*Campbell*, 353 F.3d at 892. This exception is only available "in an extraordinary case, where a constitutional violation has resulted in the conviction of someone who is actually innocent." *Henderson v. Campbell*, 353 F.3d at 892. The fundamental miscarriage of justice exception concerns a petitioner's "actual" innocence rather than his "legal" innocence. *Johnson v. Alabama*, 256 F.3d 1156, 1171 (2001) (citing *Calderon v. Thompson*, 523 U.S. 538, 559 (1998)); *Murray v. Carrier*, 477 U.S. 478, 495-96 (1986) (explaining that a "fundamental miscarriage of justice" occurs "in an extraordinary case, where a constitutional violation has resulted in the conviction of someone who is actually innocent"). To meet this standard, a petitioner must "show that it is more likely than not that no reasonable juror would have convicted him" of the underlying offense. *Schlup v. Delo*, 513 U.S. 298, 327 (1995). In addition, " '[t]o be credible,' a claim of actual innocence must be based on [new] reliable evidence not presented at trial." *Calderon,* 523 U.S. at 559 (quoting *Schlup*, 513 U.S. at 324) (explaining that "[g]iven the rarity of such evidence, in virtually every case, the allegation of actual innocence has been summarily rejected") (internal quotation marks omitted).

The *Schlup* Court stated that the petitioner must show constitutional error coupled with "new reliable evidence -- whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence -- that was not presented at trial. *Schlup* 513 U.S. at 324. This fundamental miscarriage of justice exception is not available unless "the petitioner shows, as a factual matter, that he did not commit the crime of conviction." *Ward v. Cain*, 53 F. 3d 106, 108 (5th Cir. 1995) (denying certificate of probable cause)(footnote omitted).

"The Supreme Court fairly recently made clear that an ineffective assistance of counsel claim being used for cause to excuse a procedural default of another claim is not itself excepted from the doctrine of procedural default." *Henderson v. Campbell*, 353 F.3d at 896. In *Edwards*

*v. Carpenter*, 529 U.S. 446, 451-52 (2000), a habeas petitioner argued ineffective assistance of counsel as cause for his procedural default of other constitutional claims in his § 2254 petition. But, he had never raised this ineffective assistance claim in state court, and he was now procedurally barred from raising the claim. The Supreme Court held that unless the petitioner could establish cause and prejudice to excuse his procedural default of his ineffective assistance claim, he was barred from using it as a basis for cause to excuse his procedural default of the underlying claim. *Id.* at 451-53.

The Ineffective Assistance of Counsel Standard

To prevail on a claim of ineffective assistance of trial or appellate counsel, a Petitioner must meet the two-part test set forth in *Strickland v. Washington*, 466 U.S. 668 (1984). *Strickland*'s two-part test requires a Petitioner to demonstrate that counsel's performance was deficient and "there was a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* However, if a claim fails to satisfy the prejudice component, the court need not make a ruling on the performance component.

DISCUSSION

Ground One - Double Jeopardy

Perez claims that his convictions and sentences "violate the 5th Amendment double jeopardy provisions of the United States Constitution." In support, he contends:

> Petitioner was found guilty in state court for three state law violations that had been enhanced by an injury element and his sentences were run consecutively to each other for 10 years imprisonment + 5 years probation whereas without the injury element petitioner's maximum term would be 5 years custody.

(Petition, p. 2).

Perez raised this claim on direct appeal. The state trial court and the state district court of appeal, by its affirmance, have answered the question of whether Perez's convictions were proper under state law. It is not the province of a federal court to reexamine state court determinations on state law questions. *Estelle v. McGuire,* 502 U.S. 62, 68 (1991). It is a fundamental principle that state courts are the final arbiters of state law, and federal habeas courts should not second-guess them. *Agan v. Vaughn*, 119 F.3d 1538, 1549 (11th Cir. 1997).

Additionally, the state court's findings which constitute factual determinations are entitled to the presumption of correctness provided under 28 U.S.C. § 2254(e)(1), which Perez does not overcome by clear and convincing evidence. Perez has failed to allege and show that the state courts' decisions resulted in an unreasonable application of clearly established federal law or an unreasonable determination of the facts in Perez's case.

Even if this claim were appropriate for Federal habeas review, Perez cannot prevail. Perez alleges that the double jeopardy clause prohibits the convictions because the offenses are degree variants of the same offense. A review of the applicable law demonstrates that his allegation is incorrect. Perez was charged by Information of one count of driving without a license and negligently causing serious bodily injury in violation of §322.34, Fla. Stat. (2003); one count of reckless driving causing serious bodily injury in violation of §316.192, Fla. Stat. (2003); and one count of leaving the scene of an accident with injuries in violation of § 316.027, Fla. Stat. (2003). He was tried by jury and found guilty as charged on the three counts.

Both the United States Constitution and Florida Constitution contain double jeopardy clauses that forbid successive trials for the same offense, and multiple punishments for the same offense. U.S. Const. amend. V; Art. I, § 9, Fla. Const.; *North Carolina v. Pearce,* 395 U.S. 711, 717 (1969); *Carawan v. State*, 515 So. 2d 161, 163 (Fla. 1987). There are two

general categories of multiple punishment cases: (1) cases involving a single act or transaction that constitutes a violation of "two distinct statutory provisions"; and (2) cases involving multiple violations of the same statute. *See Rutledge v. United States*, 517 U.S. 292, 297, n.6 (1996); *Brown v. Ohio*, 432 U.S. 161, 167 (1977). In either multiple punishment category, the Double Jeopardy Clause prevents the sentencing court from prescribing greater punishment than the legislature intended. *Jones v. Thomas*, 491 U.S. 376, 381 (1989); *Missouri v. Hunter*, 459 U.S. 359, 366 (1983).

Where convictions relate to two separate and distinct acts, prosecuting the defendant for two crimes does not implicate double jeopardy. *See United States v. Felix*, 503 U.S. 378, 385-86 (1992)(double jeopardy prohibition only precludes multiple prosecutions for the "same offense"). When a legislature's intent to impose multiple punishments is clearly expressed in the criminal statute, the pertinent double jeopardy inquiry is limited to ensuring that "the total punishment did not exceed that authorized by the legislature." *Jones,* 491 U.S. at 381. When dealing with the issue of whether two convictions violate double jeopardy, courts review the crimes under the "same elements" test of *Blockburger v. United States*, 284 U.S. 299 (1932). In *Blockburger*, the Supreme Court set forth the "same-elements" test which inquires whether each offense contains an element not contained in the other. If they do not, then they are the same offense. The *Blockburger* test has been codified in Florida at section 775.021(4), Florida Statutes (1997). Section 775.021(4) provides, in pertinent part, that "offenses are separate if each offense requires proof of an element that the other does not, without regard to the accusatory pleading or the proof adduced at trial." § 775.021(4), Fla. Stat. (1997). If each offense has at least one element that the other does not, then the offenses are separate crimes,

and double jeopardy does not bar multiple punishment or successive prosecution. 284 U.S. at 304.

The Florida legislature has expressed its intent to convict and sentence for each criminal offense committed in one criminal episode or transaction. §775.021(4), Florida Statutes (1997). However, there are instances where crimes committed in one course of criminal conduct require separate convictions and sentences. *Grappin v. State*, 450 So. 2d 480 (Fla. 1984)(holding that multiple thefts of firearms which occur in a single episode are to be considered separate crimes under the statute).

The evidence in this case shows that the jury properly found Perez guilty of driving without a license and negligently causing serious bodily injury in violation of § § 322.03 and 322.34, Fla. Stat. (2004) (Count One); reckless driving causing serious bodily injury in violation of § 316.192, Fla. Stat. (2004)(Count Two); and leaving the scene of an accident with injuries in violation of § 316.027, Fla. Stat. (2004) (Count Three).

The Applicable Florida Statutes

A. The offense of driving without a license and negligently causing serious bodily injury is defined by section 322.34(6)(a), Florida Statutes (2004):

> (6) Any person who operates a motor vehicle:
> (a) Without having a driver's license as required under s. 322.03; . . .
> \* \* \* \*
> and who by careless or negligent operation of the motor vehicle
> causes the death of or serious bodily injury to another human being
> is guilty of a felony of the third degree[.]

B. The offense of reckless driving causing serious bodily injury is defined by section 316.192(1)(a) and 3), Florida Statutes (2004):

> (1)(a) Any person who drives any vehicle in willful or wanton disregard for
> the safety of persons or property is guilty of reckless driving.

* * * *
(3) Any person:
(a) Who is in violation of subsection (1);
(b) Who operates a vehicle; and
(c) Who, by reason of such operation, causes:
* * * *
2. Serious bodily injury to another commits a felony of the third degree, punishable as provided in s. 775.082, s. 775.083, or s. 775.084. The term "serious bodily injury" means an injury to another person, which consists of a physical condition that creates a substantial risk of death, serious personal disfigurement, or protracted loss or impairment of the function of any bodily member or organ.

C. The offense of leaving the scene of a crash involving injury, is defined by section 316.027(1)(a), Florida Statutes, 2004:

(1)(a) The driver of any vehicle involved in a crash occurring on public or private property that results in injury of any person must immediately stop the vehicle at the scene of the crash, or as close thereto as possible, and must remain at the scene of the crash until he or she has fulfilled the requirements of s. 316.062. Any person who willfully violates this paragraph commits a felony of the third degree[.]

Applying the *Blockburger* test to the facts of this case, it is evident that Perez was not subjected to double jeopardy because each of the three counts of which he was convicted requires proof of an element that the other does not, and each charge authorizes a separate punishment. The text of the statutes demonstrates that the Florida legislature intended to authorize separate punishments for the three crimes. *See M.P. v. State*, 682 So. 2d 79, 81 (Fla. 1996)(holding that the dispositive question in determining the constitutionality of multiple convictions and sentences for offenses arising from the same criminal transaction is whether the legislature intended to authorize separate punishments for the crimes).

Perez's crimes are not degree variants of the same offense because the offenses punish different crimes. Perez's double jeopardy argument is legally unsound and without merit. *See Brown v. State*, 430 So. 2d 446 (Fla. 1983)*; State v. Van Winkle*, 407 So. 2d 1059 (Fla. 5th

DCA 1981); *Murphy v. State*, 723 So. 2d 313 (Fla. 1st DCA 1998); *State v. Mitchell*, 719 So. 2d 1245 (Fla. 1st DCA 1998).

Upon AEDPA review, it is objectively reasonable to find Perez's multiple convictions and sentences did not "run afoul" of constitutional protection against double jeopardy. The total punishment did not exceed that authorized by the state legislature. Section 775.021(4) Florida Statutes provides: (b) The intent of the Legislature is to convict and sentence for each criminal offense committed in the course of one criminal episode or transaction and not to allow the principle of lenity as set forth in subsection (1) to determine legislative intent.

The state decision resulted in a reasonable application of *Blockburger* and its progeny and a reasonable determination of the facts in light of the evidence. Perez does not show the state decision was contrary to or an unreasonable application of federal law as established by the Supreme Court or an unreasonable determination of the facts in light of the evidence.

Ground one does not warrant habeas corpus relief.

### Ground Two

Perez claims that his trial counsel was ineffective. In support, Perez alleges:

> Prior to trial petitioner advised the court appointed attorney that he did have a valid Mexican driver license but counsel never checked this or argued at trial this fact to obtain dismissal of the primary state charge allegation. Counsel also never investigated the case facts to prepare for meaningful cross-exams of witnesses, especially the victim as to what he saw before hitting the truck. Counsel also did not cross-exam [sic] a technician who processed evidence at accident scene and did not investigate whose fingerprints were on steering wheel to refute state claim that petitioner was driver.

(Petition, p. 6).

Perez raised these issues in a Rule 3.850 motion. The state trial court summarily denied the claims, and the state district court of appeal affirmed the denial of relief. (Respondent's Exhibits 10-18).

Perez contends that his counsel should have filed a motion to dismiss because Perez had a Mexican driver's license. Perez claims that a motion to dismiss would have caused his charge of driving without a valid driver's license to be dismissed. However, Perez overlooks the fact that he was a construction worker, not a nonresident migrant farm worker, and that Florida law required him to obtain a valid Florida driver's license within thirty days of having "domiciled himself in the state." Therefore, any motion to dismiss citing the Mexican driver's license exception would have failed as a matter of law. (Respondent's Exhibits 13 and 14). Florida law generally demands that a driver who has been in the State of Florida for more than thirty days to obtain a valid Florida driver's license. See §§ 322.03 (3), 322.031 (1) (2004). One exception to this statute is for nonresident migrant farm workers. See § 322.031 (1) (2004). Crucially, the statute does not exempt construction workers. See § 322.031 (1) (2004).

Section 316.003 Fla. Stat. (2004) defines a nonresident migrant farm worker as "[a]ny person employed in the planting, cultivation, or harvesting at agricultural crops who is not indigenous to, or domiciled in, the locale where so employed". Perez testified at trial that he was a construction worker; by trade, a mason. (Respondent's Exhibit 1, Trial Transcript at 117). He admitted that he had been in the United States longer than six months, and in several parts of Florida. (Respondent's Exhibit 1, Trial Transcript at 124). He admitted not having a Florida driver's license, and importantly, Perez did not testify that he had a valid Mexican driver's license. (Respondent's Exhibit 1, Trial Transcript at 124).

However, trial counsel brought out in cross examination of Polk County Deputy Sheriff Kerry Curtis that Perez had exhibited a Mexican driver's license at the scene of the accident. (See Respondent's Exhibit 1, Trial Transcript at 104). Deputy Curtis testified that a Mexican driver's license would have allowed the Perez to drive in Florida, subject to compliance with Florida law. (See Respondent's Exhibit 1, Trial Transcript at 104). Deputy Curtis considered that factor prior to charging Perez. However, Perez by his own admission had "worked in Florida for over six months for a construction company," the law required him to obtain a Florida license. (Respondent's Exhibit 1, Trial Transcript at 104-105). Any motion to dismiss the charges, citing the Mexican driver's license exception would have failed as a matter of law. (See Exhibits 13, and 14). Trial Counsel, is not required to raise frivolous claims to be deemed effective. *See Face v. State*, 854 So.2d 167, 182 (Fla. 2003). The testimony cited above refutes Perez's claim that counsel was ineffective for failing to file a motion to dismiss the charges based on Perez's having a valid Mexican driver's license.

Regarding Perez's allegation that trial counsel failed to investigate the facts of the case in order to conduct a meaningful cross-examination of the victim, the record refutes Perez's speculative and conclusory claims and the claims are without merit. (Respondent's Exhibits 14 and 15). *See Kimbrough v. State*, 886 So. 2d 981, 965 (Fla. 2004).

Contrary to Perez's claims, the trial testimony of Ms. Stevens shows that had she not taken evasive action, she would have run into the motorcycle. As a result, the record refutes Perez's allegation that investigating this aspect of Ms. Stevens testimony further would have had an effect on the outcome of the trial. Ms. Stevens was the driver of a Jeep following the motorcycle. She testified that she saw Perez driving the truck that hit the motorcycle.

Additionally, Perez argues that defense counsel failed to adequately investigate the whereabouts of Philomon Martinez, the owner of the truck. However, the record refutes Perez's speculative, and conclusory claims. (Respondent's Exhibits 14 and 15). The record establishes that defense counsel made, to no avail, substantial efforts to find the owner of the truck. (See Respondent's Exhibits 14 and 15). The duty to investigate does not require trial counsel to turn over every rock or "scour the globe" on his client's behalf, hoping something "will turn up." *Rompilla v. Beard*, 545 U. S. 374, 383 (2005).

Finally, in the third part of ground two, Perez claims that his defense counsel inadequately investigated the presence, or lack thereof, of Perez's fingerprints on the steering wheel of the truck. Perez's claim is conclusory and is refuted by the record. (See Respondent's Exhibits 14 and 15). The record establishes that crime scene investigators did not process the truck for fingerprints. (See Respondent's Exhibits 14 and 15). Additionally, assuming that Perez's fingerprints could not be found on the steering wheel, proof of this fact at trial likely would not have affected the outcome of the trial in that an impartial eyewitness, Ms. Stevens, identified Perez as the driver of the truck. (See Respondent's Exhibits 14 and 15). Thus, Perez's claim is without merit. *See Kimbrough*, 886 So. 2d at 981.

The state trial court correctly found that Perez failed to demonstrate any deficiency in trial counsel's representation. The record supports the state trial court's findings. Perez fails to meet the first prong of *Strickland*, in failing to prove deficient performance, and fails to meet the second prong of *Strickland* which requires that but for counsel's alleged unprofessional errors, the result of the proceeding would have been different. *Strickland,* at 687-88; *Oisorio v. State*, 676 So. 2d 1363 (Fla. 1996).

Perez fails to show that the State trial court's decision was contrary to, or an unreasonable application of, clearly established Federal law as determined by the Supreme Court, or that the State court's determination of facts were unreasonable in light of the evidence.

Ground two does not warrant habeas corpus relief.

## Ground Three

Perez claims that he was denied his Sixth Amendment right to trial by jury "where trial jurors [were] not told all elements of charged crimes." In support, he claims:

> On August 11, 2004, a state trial jury rendered verdicts finding petitioner guilty of state law violations. But, the judge told the jury that any finding as to potential sentences was not their job, and they were to disregard it. The judge went on to notify the jury it was his job to determine an appropriate sentence if petitioner were found guilty.

(Petition, p. 8).

Perez raised a similar claim as an ineffective assistance of counsel claim in ground seven of his Rule 3.850 motion for post conviction relief. The state trial court denied the claim, stating:

> Regarding Claim Seven, Defendant contends counsel was ineffective for not requesting the jury be told what penalties Defendant could face if he were found guilty. However, pursuant to Fla. R. Crim. P. 3.390(a), the Court could not have instructed the jury on the sentence that may be imposed for the offense for which Defendant was on trial. *See also Leggett v. State,* 718 So. 2d 878 (Fla. 4th DCA 1998). Accordingly, counsel cannot be said to be ineffective for failing to make a futile motion. Based on the foregoing, the claims is **DENIED**.

Although Perez raised a similar ineffective assistance of counsel claim, as set out above, Perez did not raise the claim that he was denied his Sixth Amendment "right to trial by jury where the Court failed to instruct the jury on all elements of the charged crimes" in either his direct appeal or in his 3.850 motion for postconviction relief, the denial of which was affirmed

by the state district court of appeal. Thus, Perez did not raise ground three in state court and the ground is unexhausted and procedurally barred. Perez has not shown cause and prejudice to overcome the procedural bar. Nor has he shown that a manifest injustice will occur if the Court does not reach the merits of this claim.

Even if the claim presented a federal question, Perez defaulted his ground by not raising the constitutional dimension of the claim in a timely manner both at trial and on direct appeal. Perez presented this issue to the state trial and appellate courts solely as a matter of ineffective assistance of counsel for not requesting the jury be told what penalties Perez could face. Perez did not challenge the matter of federal due process. Even if state law bears some relation to federal constitutional requirements, *Luton v. Grandison*, 44 F.3d 626, 628 (8th Cir.1994), *cert. denied,* 513 U.S. 1195 (1995), the presentation of the claim in state law terms is insufficient to support a finding that the state courts have had a fair opportunity to address the constitutional claim. *Duncan v. Henry*, 513 U.S. 364 (1995).

Accordingly, this claim was not exhausted as a federal constitutional issue and is now procedurally barred. Moreover, even if considered as a claim of ineffective assistance of counsel for not requesting the jury be told what penalties Perez could face, Perez is not entitled to relief. Pursuant to Fla.R.Crim.P. 3.390(a) the state trial court not have instructed the jury on the sentence that might be imposed for the offenses for which Perez was on trial. See *Legette v. State*, 718 So.2d 878 (Fla. 4th DCA 1998). Counsel is not ineffective for failing to make a futile motion.

Ground three does not warrant habeas corpus relief.

Ground Four

Perez claims that he was denied his Fourteenth Amendment right to Due Process when the state trial court refused to grant his Rule 3.850 motion. Perez's claim is vague and conclusory, and fails to present a cognizable federal claim.

To the extent that Perez challenges the state court's decision to summarily reject his second Rule 3.850 motion, his claim is not cognizable on federal habeas corpus review because he asserts no federal constitutional violation. *See* 28 U.S.C. § 2254(a); *Estelle v. McGuire*, 502 U.S. at 62, 67 (1991) ("[I]t is not the province of a federal habeas court to reexamine state-court determinations on state-law questions."). A federal court is not the appropriate forum to challenge the process afforded in state collateral proceedings because the challenge attacks a proceeding collateral to the prisoner's confinement and not the confinement itself. *Quince v. Crosby*, 360 F.3d 1259, 1261-62 (11th Cir. 2004) ("[W]hile habeas relief is available to address defects in a criminal defendant's conviction and sentence, an alleged defect in a collateral proceeding does not state a basis for habeas relief."); *Spradley v. Dugger*, 825 F.2d 1566, 1568 (11th Cir. 1987) (a habeas claim that the state trial court violated a petitioner's due process rights because the court failed to conduct an evidentiary hearing and attach to its opinion pertinent portions of the record resolved only issues unrelated to the cause of petitioner's detention and stated no basis for habeas relief).

Essentially, Perez's claim is founded on his general disagreement with the trial court's denial of relief without any specifics complaints. The state trial court's findings are supported by the record and the lower tribunal rulings were properly upheld by the state district court of appeal. Perez's claim fails to satisfy the threshold showing of entitlement to relief pursuant to 28 U.S.C. § 2254(d). Perez fails to show that the State trial court's decisions were contrary to, or an unreasonable application of, clearly established Federal law as determined by the

Supreme Court, or that the state court's determination of facts was unreasonable in light of the evidence. 28 U.S.C. § 2254(d).

Perez misunderstands the role of federal habeas review. It has long been established that federal habeas courts sit to ensure that individuals are not imprisoned in violation of the Constitution -- not to correct errors of fact. *See, e. g., Moore v. Dempsey*, 261 U.S. 86, 87-88 (1923) (Holmes, J.) ("What we have to deal with [on habeas review] is not petitioner's innocence or guilt but solely the question whether their constitutional rights have been preserved"); *Hyde v. Shine*, 199 U.S. 62, 84 (1905) ("It is well settled that upon habeas corpus the court will not weigh the evidence"); *Ex parte Terry*, 128 U.S. 289, 305(1888)("As the writ of habeas corpus does not perform the office of a writ of error or an appeal, [the facts establishing guilt] cannot be re-examined or reviewed in this collateral proceeding").

Ground four does not warrant habeas corpus relief.

Accordingly, the Court orders:

That Perez's petition is denied. The Clerk is directed to enter judgment against Perez and to close this case.

**CERTIFICATE OF APPEALABILITY AND
LEAVE TO APPEAL IN FORMA PAUPERIS DENIED**

IT IS FURTHER ORDERED that petitioner is not entitled to a certificate of appealability. A prisoner seeking a writ of habeas corpus has no absolute entitlement to appeal a district court's denial of his petition. 28 U.S.C. § 2253(c)(1). Rather, a district court must first issue a certificate of appealability (COA). *Id.* "A [COA] may issue ⋯ only if the applicant has made a substantial showing of the denial of a constitutional right." *Id.* at § 2253(c)(2). To make such a

showing, petitioner "must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong," *Tennard v. Dretke*, 542 U.S. 274, 282 (2004) (quoting *Slack v. McDaniel*, 529 U.S. 473, 484 (2000)), or that "the issues presented were 'adequate to deserve encouragement to proceed further,' " *Miller-El v. Cockrell*, 537 U.S. 322, 335-36 (2003) (quoting *Barefoot v. Estelle*, 463 U.S. 880, 893 n. 4 (1983)). Petitioner has not made the requisite showing in these circumstances.

Finally, because Petitioner is not entitled to a certificate of appealability, he is not entitled to appeal in forma pauperis.

ORDERED at Tampa, Florida, on April 17, 2009.

/s/ Virginia M. Hernandez Covington
VIRGINIA M. HERNANDEZ COVINGTON
UNITED STATES DISTRICT JUDGE

Counsel of Record
Antonio M. Perez